**Tallulah MORGAN et al., Plaintiffs,**

v.

**John J. McDONOUGH et al., Defendants.**

**Civ. A. No. 72–911–G.**

United States District Court,
D. Massachusetts.

Sept. 20, 1978.

Larry Johnson, Center for Law and Education, Gutman Library, Cambridge, Mass., Laurence S. Fordham, Foley, Hoag & Eliot, Boston, Mass., for plaintiffs.

Caroline Playter, Dorchester, Mass., for El Comite de Padres.

Barbara L. Schulman, Puerto Rican Legal Defense, New York City, for Puerto Rican Legal Defense.

Robert Blumenthal, Gen. Counsel, State Board of Ed., Robert H. Bohn, Jr., Asst. Atty. Gen., Dept. of the Atty. Gen., Boston, Mass., for State Board of Education.

Michael Betcher, Asst. Corp. Counsel, City Law Dept., Boston, Mass., for Mayor, City of Boston.

James T. Grady, Grady & McDonald, Boston, Mass., for BTU.

Richard W. Coleman, Segal, Roitman & Coleman, Boston, Mass., for BASAS—Boston Association of School Administrators and Supervisors.

Thayer Fremont-Smith, Choate, Hall & Stewart, Boston, Mass., for Boston Home and School Association.

Edward McHugh, Nutter, McClennen & Fish, Boston, Mass., for Receivers South Boston High School.

Martin A. Walsh, Community Relations Service, Boston, Mass., for Community Relations Service.

Marshall Simonds, Paul F. Ware, Jr., Douglas P. Woodlock, Goodwin, Procter & Hoar, H. Charles Hambleton, Log Officer, Boston School Committee, Dept. of Implementation, Boston, Mass., for Special Counsel Boston School Committee and Boston School Department.

## MEMORANDUM AND ORDERS TERMINATING TEMPORARY RECEIVERSHIP OF SOUTH BOSTON HIGH SCHOOL

GARRITY, District Judge.

At the hearing on August 31, 1978 the court granted the school defendants' motion for termination of the temporary receivership of South Boston High School and stated its basic findings supporting that order. The school defendants' motion, filed April 28, 1978, was accompanied by a form of proposed consent decree. However, in briefs and at the hearing on May 30, 1978, plaintiffs and other parties withheld their consent, objected to termination generally and to various specific provisions. Hence the need for particularized orders. For the most part they adopt the provisions of the proposed consent decree. The principal changes made by the court are in the scope of the provisions affecting the administrative staff and the assignment of monitoring functions to the Department of Implementation.

Termination at this time is the result of a course of proceedings and investigations advised by the Court of Appeals in its opinion dated January 26, 1977, in *Morgan v. McDonough*, 1 Cir. 1977, 548 F.2d 28, 33. At a hearing on the day after issuance of the opinion of the Court of Appeals, the court ordered that various reports and proposals be filed by February 11, 1977 and scheduled a hearing for February 17. In order that more complete information might be obtained the parties requested postponement of the hearing, which was continued until April 21, 1977. At that time and thereafter the court heard the arguments

and positions of the parties and ruled against termination during 1977. Throughout the 1977–78 school year conditions at the high school improved dramatically, as reflected in periodic reports received from the temporary receiver and the court-appointed experts and in stories in the news media. For example, a report by the experts, Deans Dentler and Scott of the Boston University School of Education, on their visit to the school on March 3, 1978 stated,

> On our visit, the plant was absolutely transformed. It has been improved tenfold since 1976. It is clean, repaired, new equipment has been added, and it actually looks like a place anyone would be willing to attend. The programmatic and interpersonal environments are even more extraordinarily transformed than is the plant. No one shuffles about anymore. An atmosphere of dignity and participation prevails.

To see for itself, the court visited the school for two and a half hours on May 18, 1978. By the end of the 1977–78 school year it became apparent that the conditions warranting the extraordinary receivership remedy no longer existed.[1] Plaintiffs' filing on May 19, 1978, in response to the school defendants' motion for termination, listed at pp. 3–4 twenty problems in and outside the school which, in their opinion, supported the imposition of receivership in December 1975. Almost without exception, these problems have disappeared.

Developments within the school committee and school department also support the court's order of termination. Foremost is their commitment to desegregation at South Boston High School and to preservation of the changes made pursuant to the court's orders entered December 9, 1975 and subsequently, and ratified in the proposed consent decree accompanying their motion for termination. Additional evidence of the school defendants' good faith and cooperation is found in their votes on August 25, 1978 appointing administrators nominated by the receiver. The court is relying too on the affirmative action program adopted by the current school committee shortly after it took office at the beginning of this year. Another important development has been the recent reorganization of the school department enacted by the state legislature, Mass.Stats.1978, c. 333. Henceforth the business manager, chief plant engineer and chief structural engineer will be under the control of the Superintendent, who will be accountable for the physical condition of the school. Finally, the Department of Implementation has come into its own and has demonstrated, especially in the matter of student assignments for the 1978–79 academic year, its readiness and capacity to facilitate and monitor implementation of the court's desegregation plan. These favorable developments underlie the court's confidence that the fruits of the temporary receivership at South Boston High School will be preserved without continuing court intervention.

The plaintiff class and State Board of Education objected to termination unless gradual and urged a trial period during which the court and parties might evaluate the actions of the school defendants in carrying out the provisions of the proposed consent decree. In our opinion the school defendants, by their conduct outlined in the previous paragraph, have shown that a longer trial period than one commencing with their filing on April 28, 1978 is unwarranted. Their motion for termination represented that they "are now carrying out the proposed consent decree which is designed to give effect to the Court's Desegregation Orders in a meaningful manner at South Boston High School" and they have been carrying out the proposed decree pending the court's ruling on their motion. For example, in addition to the accomplishments previously referred to, the school defendants have already exceeded the goals for faculty and staff desegregation set

---

1. "The receivership should last no longer than the conditions which justify it make necessary, and the court's utilization of the receivership must not go beyond the constitutional purposes which the device is designed to promote." *Morgan v. McDonough*, 1 Cir. 1976, 540 F.2d 527, 535.

forth in paragraph 19 of the orders and have completed nearly all of the repairs specified in paragraph 43.

The Boston Teachers Union, which has been heard as an intervenor throughout the remedial phase of these proceedings, endorsed the termination of the receivership, which it opposed from its inception, but filed objections to several specific provisions of the proposed consent decree, herein adopted, which conflict with collective bargaining agreements defining the rights and benefits of teachers and administrators. For examples, paragraph 6 permits the headmaster to select instructional aides, whereas the bargaining agreement provides for recall by seniority; paragraph 10 prescribes certain in-service meetings to be led by the headmaster, whereas the agreement says that they shall be conducted by the teaching staff; paragraph 15, which permits the headmaster to select new faculty members until August 31, 1980, conflicts with teachers' transfer rights; and paragraph 33 creates the new position of coordinator of the work-experience program without the job description, compensation and qualifications having been negotiated with the union and posted for transfer or promotion. Generally the Union has objected to what it calls the school's "protective custody for two years described in the proposed Consent Decree". The court overrules these objections and, in converting proposed consent decree provisions into court orders, has prefaced several sentences with the phrase, "Notwithstanding inconsistent collective bargaining agreement provisions,". Similarly, paragraph 7 of the orders which follow ratifies school defendants' appointments and transfers of faculty and staff made pursuant to formal orders of the court, e. g., those entered April 7, June 4, August 20 and September 27, 1976 and those made without formal orders, e. g., the appointments on August 25, 1978, by direction of the receiver with court approval.

In support of its overruling the Union's objections, the court finds that the incompatibility of certain of its orders which follow with collective bargaining agreements is necessary to hold the gains in peaceful desegregation made at South Boston High School since December 1975 and to maintain the conditions at the high school which have enabled the court to terminate the receivership. Where unnecessary, e. g., paragraph 14 of the proposed consent decree which provided for further staff transfers by the headmaster, the court has sustained the Union's objection and deleted the provision. These rulings are special desegregation measures, akin to those ordered in section 9 of the omnibus orders entered on May 3, 1976, section 11 of those on May 6, 1977 and section 8 of those on March 21, 1978. Moreover, they will govern for but two more years. Throughout these proceedings the court has taken pains to avoid orders which would conflict with applicable union contracts. We can think of only one instance other than in connection with the special problems at South Boston High School, viz., emergency staffing of the Department of Implementation, when collective bargaining agreements were not observed. The understanding and cooperation of teachers and administrators have been the linchpins of the student desegregation plan, holding fast in sometimes stormy weather. The court will remain mindful of the rights of faculty and staff and their union representatives.

The return of South Boston High School to normal channels of administration, herein ordered, is due to the perseverance and sacrifice of many persons. It is not a purpose of this memorandum of decision to identify them all, even as members of groups. However, any discussion of the receivership's termination must acknowledge the strength of character of the students who attended the school and the parents who sent them. Their courage and faith were indispensable. Also, without elaborating the details of their contributions, there are a handful of individuals whose lives were caught up in the effort to create a learning environment at a desegregated South Boston High School: Jerome C. Winegar, the headmaster who was recruited from St. Paul, Minnesota; Geral-

dine Kozberg, who came with him from St. Paul to direct program development; James B. Corscadden, acting headmaster until Winegar's appointment and thereafter assistant headmaster; Marion J. Fahey, temporary receiver at the court's request, in addition to being superintendent of schools; Joseph M. McDonough, community district superintendent; Martin A. Walsh, regional director of the Community Relations Service of the U.S. Department of Justice; and Edward F. McHugh, Jr., Esquire, counsel for the temporary receiver. The court and parties will always be indebted to them.

### ORDERS

1) The temporary receivership of South Boston High School is terminated as of August 31, 1978 on the terms and conditions herein stated.

2) Except for the parts deleted (first two unnumbered paragraphs and paragraphs 1–4, 14, 19 and 43), the provisions of the proposed consent decree filed on April 28, 1978 with the school defendants' motion for termination of South Boston High School receivership are adopted as orders of this court as herein modified.

3) Consent decree paragraphs 1–4, 14,[2] 19 and 43 are deleted. In lieu of paragraphs 1–4 it is ordered as follows:

### General

1. Programs and curricula as developed and established and administered shall be non-discriminatory and inclusive of all racial/ethnic groups. The School Committee shall give full consideration and support to programs hereafter recommended by the Headmaster and approved by the Superintendent. During the 1978–79 and 1979–80 school years, the Superintendent and Headmaster, with such assistants as they may select, shall meet at least quarterly to review conditions at South Boston High School and compliance with these orders and to develop and adopt additional special measures if needed to provide a peaceful, non-segregated educational setting.

2. Student enrollment shall be not less than 850 and not more than 1100. The student body shall be composed in accordance with Community District VI racial/ethnic guidelines.

3. The school defendants shall reappoint the following members of the administrative staff for the 1979–80 and 1980–81 school years, notwithstanding inconsistent collective bargaining agreement provisions, except upon a showing of good cause: Jerome Winegar, Geraldine Kozberg, Leslie Griffin, William Heath, Albert Holland,[3] Audrey Leung-Tat, Thomas Pilleri and James Poor.

4. The Department of Implementation shall have the responsibility 1) to inform employees of the school department below the level of Deputy Superintendent on matters of implementing these orders, and 2) to monitor compliance with them, and to this end the D.I. shall have prompt access to and obtain from such employees data necessary for its monitoring function, e. g., rosters of professional and non-professional personnel by name, racial/ethnic classification, position and contract status, changes in personnel during the school year, student enrollment figures by grade and racial/ethnic classification, information on disciplinary actions and racial/ethnic composition of special and alternative programs. The orders herein shall be treated by the school defendants, the D.I. and the parties as special desegregation measures subject to the reporting requirements of part 8 of the court's orders entered March 21, 1978; and such reports shall include a subdivision entitled "South Boston High School".

2. Paragraph 14, as submitted, is omitted altogether. A new paragraph 14 is devised, *infra*, by detaching what was previously part of the preceding paragraph.

3. The last three persons named were appointed on August 25, 1978 for 1978–79. Mr. Holland's appointment is in progress; if not as yet completed, it is ordered that the school defendants appoint Mr. Holland for 1978–79 also. In each instance, the court gave its prior approval pursuant to its order dated December 9, 1975.

4) In lieu of consent decree paragraph 19, it is ordered as follows:

19. Appointment for professional and non-professional positions at South Boston High School by the School Committee shall be made on the basis of one black person to one white person until not less than 20% of the professional staff and 20% of the non-professional staff are black. In addition, affirmative action efforts shall be continued until no less than 25% of each of these staffs are black. The appointment of other minority persons shall not count as the appointment of a white or a black person. However, the School Committee shall use their best efforts to continue to increase the percentage of other minority personnel at South Boston High School.

5) In lieu of consent decree paragraph 43, it is ordered as follows:

43. The School Committee, School Department and the Headmaster shall provide suitable space and equipment for purposes of all educational programs at South Boston High School and space as necessary for alternative programs outside the high school. Renovation of the school shall include upgrading the facilities as follows:

(a) repair of garbage disposal unit in Room 101;

(b) refinishing of the floors in both gymnasia;

(c) provision and installation of replacement glass blackboard in small gym;

(d) repair of all walls damaged by water seepage;

(e) waterproofing and renovation of food storage area in the cafeteria;

(f) completion of work required on fixtures in Room 100;

(g) completion of work on new electrical outlets in Rooms 217, 218 and 220;

(h) refurnishing of Rooms 217, 218 and 220;

(i) completion of electrical work [and carpeting] in business laboratory in Rooms 208, 228 and 238;

(j) remodeling of biology laboratory in Room 308;

(k) completion of electrical work in Room 204;

(l) purchasing and installation of furniture and equipment for foreign language laboratory in Room 204;

(m) renovation of stage for Theatre Arts;

(n) installation of dark room in Room 301;

(o) repair shower in chemistry laboratory, Room 316.

Such other renovation as is deemed necessary by the Headmaster and approved by the District Superintendent shall also be approved and implemented by the School Committee. Work on the renovations and repairs listed in subparagraphs (a) through (o) above shall begin immediately and shall be completed as soon as reasonably possible. The chief structural engineer shall file written monthly reports beginning October 1, 1978, with the School Committee, Superintendent, Department of Implementation and Headmaster detailing the progress made in each area listed above until work in all areas is completed.

6) Modifications are ordered in provisions under the subheadings included in the school defendants' April 28, 1978 filing, as follows:

*Community/School Alliance*

—in paragraph 5, line 9, add "/Dorchester" after "South Boston/Roxbury"; and add at the end, "There shall be at least ten such meetings during a school year, which shall be desegregated to the extent that no more than two-thirds of the participants shall be of any one racial/ethnic classification. Within one week after each meeting, the Headmaster or an assistant designated by him shall send minutes of the meeting to the D.I., including the date for the next meeting."

—in paragraph 7, line 2, add after "Headmaster" the words "the faculty and faculty senate, the D.I."

## Program and Staff Development

—in paragraph 9, line 9, add after "per year" the sentence, "It shall be written and a copy forwarded to the D.I. by December 1, 1978; and shall include a timetable and criteria for ascertaining accomplishment and completion."

—in paragraph 10, strike the third sentence beginning at line 9 and substitute the following sentence, "Notwithstanding inconsistent collective bargaining agreement provisions, there shall be up to ten such in-service meetings each year, five of which shall be in accordance with the provisions of the collective bargaining agreement and will address traditional objectives."

—in paragraph 11, add at the end, "It shall be written and a copy forwarded to the D.I. by December 1, 1978; and shall include a timetable and criteria for ascertaining accomplishment."

—in paragraph 13, make the last subparagraph a new paragraph, numbered 14, and add the following sentence, "Recommendations shall be in writing and, if adopted, copies shall be forwarded to the D.I."

## Administration

—in paragraph 15, strike the first three lines and substitute the following, "Notwithstanding inconsistent collective bargaining agreement provisions, the School Committee shall direct the Superintendent of Schools and the Associate Superintendent for Personnel for a period until August 31, 1980 to transfer . . ."

—in paragraph 16, add at the end, "The Superintendent, Community District Superintendent and Headmaster shall jointly write and forward a copy to the D.I. by March 1, 1979 a plan for periodic reductions in non-professional support personnel, including a timetable and descriptions of types and contingencies of reductions."

## Alternative Learning/Teaching Environments

—no modifications.

## New Approaches to Reading

—in paragraph 27, add at the beginning of the first sentence the words, "Notwithstanding inconsistent collective bargaining agreement provisions, . . ."

## Arts in Education

—no modifications.

## Schoolwide Counselling and Guidance

—in paragraph 32, line 7, add after "designated" the words "without delay".

—in paragraph 33, lines 4–5, insert after "include" the words "notwithstanding inconsistent collective bargaining agreement provisions"; and in line 6, add after "appointed" the words "without delay"; and add at the end, "The program shall be written and a copy forwarded to the D.I. by December 1, 1978; and shall include criteria for ascertaining accomplishment."

## Discipline

—in paragraph 35, add at the end, "The Headmaster shall draft a reporting form and send to the D.I. monthly reports with respect to this program, including the number of students in this program, their grade, racial/ethnic classification, when assigned to it, whether or not special needs or bilingual students, etc., together with copies of the Headmaster's monthly reports to the Superintendent with respect to suspensions."

—in paragraph 36, line 2, add after "authority" the words, ", after notice to the student and his or her parents or guardians and an opportunity for them to be heard,".

## Safety and Security

—in paragraph 37, line 10, add after "shall" the words "without delay" and after "given" the word "six."

—in paragraph 38, add at the beginning the words, "Notwithstanding collective bargaining agreement provisions" and in line 11, change the period to a semicolon and add "extra compensation shall be determined by the Superintendent upon the joint recommendation of the Headmaster and Community District Superintendent."

—in paragraph 39, line 13, add after "Headmaster" the words "after consultation with the faculty senate and".

—in paragraph 40, line 5, add at the end the words "and transitional aides."

### Transportation

—in paragraph 41, add at the end, "Students, parents and guardians shall be informed of the availability of van service for these purposes."

### Facilities and Equipment

—in paragraph 44, line 4, strike the words "during the 1977–78 and 1978–79 academic years" and substitute "during the 1978–79 and 1979–80 academic years"; and in line 6, add after "submitted" the words "by the chief plant engineer" and after "Superintendent" a comma and the words "Department of Implementation".

—in paragraph 45, line 8, add after "Department" a comma and the words "Department of Implementation".

### Budget and External Funding

—in paragraph 46, line 2, strike "agree to" and substitute "shall"; and at lines 4–7 strike the second sentence and substitute the following, "Regardless of the availability of external funds, the School Committee shall expend for each academic year through 1978–80 not less than $100,000 for programs other than those pertaining to safety and security."

—in paragraph 47, line 1, add after "approve" the words "without delay"; and in line 6, strike "during" and substitute "beyond".

7) Actions heretofore taken by the successive temporary receivers and the School Committee and Superintendent in carrying out the court's orders entered December 9, 1975 and subsequently, including restructuring the administrative organization of South Boston High School and transferring and appointing members of the administrative staff and faculty, are hereby ratified and adopted.

8) Within ten days of issuance of these orders, the school defendants shall file and serve on the parties a Complete Order Terminating South Boston High School Temporary Receivership, bearing the date of these orders and combining provisions of the proposed consent decree filed April 28, 1978 with the additions, deletions and modifications herein ordered.